UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD DUANE MCDONALD,

        Petitioner,

v.                                       Case No. 2:15-cv-146
                                        HON. ROBERT J. JONKER

JEFFREY WOODS,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        Petitioner Gerald Duane McDonald filed this petition for writ of habeas corpus challenging the validity of his state court convictions. In May 2012, a jury convicted Petitioner of one count of first-degree home invasion in violation of Mich. Comp. Laws § 750.110a(2); one count of armed robbery in violation of Mich. Comp. Laws § 750.529; one count of carrying a concealed weapon in violation of Mich. Comp. Laws § 750.227; one count of felon in possession of a firearm in violation of Mich. Comp. Laws § 750.224f; three counts of possession of a firearm during the commission of a felony in violation of Mich. Comp. Laws § 750.227b; and five counts of resisting arrest in violation of Mich. Comp. Laws § 750.81d. Petitioner maintains that his convictions were obtained in violation of his federal rights and asserts the following claims:

    I.      Petitioner was denied his constitutional right of due process because he was not given a meaningful opportunity to present a defense by testifying without being confronted with an irrelevant prior conviction.

    II.     Petitioner was denied due process of law because the trial court would not authorize payment for the attendance of his DNA expert.

    III.    Petitioner was denied a fair trial by the repeated reference to his parole status during the trial.

> IV. Petitioner was denied his constitutional right of due process because of improper judicial questions and comments in the presence of the jury.
>
> V. Petitioner was denied his constitutional right of due process when he was not advised of his *Miranda* rights by the officer and certain statements were used against him at trial.
>
> VI. Petitioner was denied his constitutional right of the Confrontation Clause because he was not able to cross-examine his alibi witness whose hearsay statement was used in the prosecution's favor.

The Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. This matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that this petition for writ of habeas corpus be denied.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district

court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This

presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

In its December 17, 2013 opinion, the Michigan Court of Appeals summarized the facts of this case as follows:

> Sometime between 4:30 and 4:45 a.m. on November 2, 2011, the victim walked into her dining room and saw defendant pointing a silver handgun at her. Defendant demanded money, and the victim responded that she did not have any cash. After several minutes, defendant walked through the kitchen and left the victim's home through a back door. Thereafter, the victim realized that her purse, which had been in the kitchen, was missing. The police were contacted, and the victim provided them with a description of the perpetrator. Defendant was located outside an apartment building two blocks away from the victim's home. Two officers approached defendant and attempted to detain him. Defendant resisted, and it took five uniformed officers to subdue him. After defendant was arrested, a silver handgun was found on the ground near where the struggle between defendant and the officers took place. The victim's purse was located in one of the apartment building's window wells. Defendant provided various false names to the police. The victim identified defendant less than one hour after she saw him in her home, and she stated that she was 99 percent sure that defendant was the perpetrator. The victim identified defendant for a second time in a lineup on November 16, 2011, specifically stating that she recognized defendant's eyes and ears. Defendant was identified by the victim as her assailant for a third time at trial.
>
> At trial, defendant disputed that he was the perpetrator and that the gun found by police belonged to him. Defendant's supposed girlfriend testified that defendant, along with others, lived with her in November 2011 in the apartment building outside of which the police located the gun, purse, and defendant shortly after the criminal episode. She further testified that defendant had been smoking methamphetamines with her in their apartment beginning

> on the evening of November 1 and running through the morning of November 2, 2011. According to the girlfriend, defendant went outside for the first time that morning only minutes before he was arrested by police. The jury convicted defendant of the charged crimes.

(ECF No. 9-8, PageID.389-390) (footnote omitted).

Petitioner raised three issues in his direct appeal and three issues in his pro per Standard 4 Brief pursuant to Michigan Supreme Court Administrative Order No. 2004-6. The undersigned will address each argument below.

Petitioner first argues that he was denied due process when the trial court ruled that the prosecutor could use a prior conviction of home invasion to impeach Petitioner if he testified at trial under Michigan Rule of Evidence 609.[1] Petitioner subsequently decided not to testify at trial. Petitioner claims that the trial judge erred when applying Michigan Rule of Evidence 609. But trial court errors in the application of state evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir.1993).

Petitioner further contends that the trial court's ruling denied him of his right to testify at trial and was a structural error. In rejecting this due process claim, the Michigan Court of Appeals held that Petitioner waived his right to appellate review because he ultimately decided not to testify at trial. (ECF No. 9-8, PageID.393). The state court's holding is consistent with Supreme Court precedent. In *Luce v. United States,* 469 U.S. 38, 42-43 (1984), the United States Supreme Court held that a defendant must testify in order to raise and preserve a claim of improper impeachment. The Court noted that, "[b]ecause an accused's decision whether to testify 'seldom

---

[1] Before this case, Petitioner had four prior convictions of home invasion. However, the trial court ruled that only one of the four convictions could be used for impeachment at trial.

- 5 -

turns on the resolution of one factor,' a reviewing court should not assume that the trial court's adverse ruling motivated a defendant's decision not to testify." *Id.* (quoting *New Jersey v. Portash*, 440 U.S. 450, 467 (1979)) (Blackmun, J., dissenting).  Federal courts have extended the Supreme Court's reasoning in *Luce* to cases on habeas review from state court convictions and held that, where a defendant does not testify, the issue is not preserved for federal habeas review. *See, e.g., Zueski v. Grayson*, 81 F. App'x 849, 850 (6th Cir. 2003); *Hall v. Grant*, No. 84–1531, 1985 WL 13926 *3 (6th Cir. Nov. 20, 1985); *Turner v. Curtin*, No. 2:07–CV–12739, 2011 WL 740753, *5 (E.D. Mich. Feb. 24, 2011)(citing cases). Thus, contrary to Petitioner's argument, the trial court did not prevent him from testifying.  He *chose* not to testify.  And because Petitioner chose not to testify, he cannot challenge on habeas review the trial court's decision regarding impeachment with a prior conviction.

Petitioner next argues that he was denied due process when the trial court would not authorize payment for his DNA expert.[2]  In rejecting this argument, the Michigan Court of Appeals explained:

> Defendant next argues that the trial court abused its discretion by denying his motion for funds to cover the fees of his deoxyribonucleic acid (DNA) expert that would be incurred for her time testifying as a witness in court and traveling to and from court. DNA swabs had been taken from the gun and defendant for testing. The trial court had previously authorized the payment of $500 so that defense counsel could consult with the DNA expert, but the court refused to authorize any additional monies, noting that the prosecution's DNA expert had already opined in court that her DNA testing was inconclusive. "This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), citing MCL 775.15. A court abuses its discretion when a decision by the court results in an outcome that falls outside the range of

---

[2] In his brief, Petitioner also conclusory states that the denial of funds for his expert witness amounted to a violation of the Sixth Amendment.  However, Petitioner failed to present this argument to the state courts. In addition, Petitioner did not offer any explanation as to how this violated the Sixth Amendment.

reasonable and principled outcomes. *Carnicom*, 272 Mich App at 616-617. "A trial court is not compelled to provide funds for the appointment of an expert on demand." *Id.* at 617. An indigent defendant must show that there exists a nexus between the facts in the case and the need for an expert witness. *Id.* A defendant has the burden of demonstrating "'that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to trial . . . .'" *Id.*, quoting MCL 775.15. "It is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Carnicom,* 272 Mich App at 617 (citation omitted).

Defendant asserted at trial that his DNA expert was prepared to testify that there was a "major" DNA donor relative to the gun and that this major donor was not defendant. Defense counsel did not proffer any supporting documentation from his DNA expert. The prosecution's DNA expert testified that the DNA evidence was "inconclusive" with respect to whether defendant had touched the gun. The expert explained that she could neither include nor exclude defendant as a DNA donor. The prosecution's expert further testified that there were, at minimum, three different DNA donors. She additionally indicated, "There's not what I would call out a major donor."

Giving defendant the benefit of assuming the accuracy of his claims at trial absent any supporting proof such as an affidavit, the record does not reflect that the testimony of defendant's DNA expert would have likely benefited the defense. First, the prosecution's own expert could not establish a DNA link between defendant and the gun. And it is worth noting that defendant asserted that his expert could only exclude defendant as the major donor in connection with the DNA found on the gun, thereby indicating that his own expert could not altogether exclude him as a donor. Additionally, the prosecution's expert provided evidentiary ammunition favorable to defendant by stating that there were at least three DNA donors. Under these circumstances, we cannot conclude that the trial court's ruling constituted an abuse of discretion. Moreover, assuming an error, we cannot conclude that the presumed error was prejudicial to defendant, given the questionable beneficial impact of the expert's prospective testimony and considering the overwhelming direct and circumstantial evidence of guilt. See MCL 769.26 (statutory harmless-error rule); *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). The trial court's ruling, assuming it was flawed,

> did not result in a miscarriage of justice, nor did it undermine the jury's verdict. See MCL 769.26; *Lukity*, 460 Mich at 495. Reversal is unwarranted.

(ECF No. 9-8, PageID.394-395).

The Supreme Court has recognized the general principle that the government must provide indigent defendants with the "basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. North Carolina,* 404 U.S. 226, 227 (1971). Although the government need not purchase for the indigent defendant all the assistance that a wealthier defendant might buy, fundamental fairness requires that indigent defendants have "an adequate opportunity to present their claims fairly within the adversary system." *Ross v. Moffitt*, 417 U.S. 600, 612 (1974). In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that

> [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83. However, as of now, the Supreme Court has not expanded the holding in *Ake* to apply to the appointment of non-psychiatric experts. *See, e.g., Caldwell v. Miss.*, 472 U.S. 320, 323 n.1 (1985) (refusing to apply the holding in *Ake* to the appointment of a criminal investigator, fingerprint expert, and ballistics expert). Thus, because the Supreme Court has not extended *Ake* to non-psychiatric experts, the rejection of Petitioner's claim is not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

Nonetheless, even if *Ake* extended to non-psychiatric experts, the trial court did not prevent Petitioner from presenting an adequate defense. As the state court explained, the prosecution's DNA expert presented favorable testimony for Petitioner—most notably that there were three DNA donors on the gun and there was no DNA link between Petitioner and the gun.

Petitioner's DNA expert would have only provided cumulative testimony that there was no DNA link established between the gun and Petitioner.

Petitioner next argues that he was denied a fair trial by the repeated reference to his parole status during the trial. In his brief, Petitioner identifies two times when his parole status was discussed at trial.  The first time occurred during voir dire when a prospective juror notified the trial court that she might know one of the potential witnesses.  In response, the trial judge asked the prosecutor about the witness and the prosecutor stated, "[the witness] is as a parole officer." (ECF No. 9-3, PageID.248). This witness did not testify at trial.  The second time occurred during the testimony of Officer Kusler. Officer Kusler was the arresting officer in this case.  Prior to his testimony, Petitioner's attorney attempted to have the trial judge rule on the admissibility of potential testimony regarding an outstanding arrest warrant.  (ECF No. 9-4, PageID.313). The trial judge did not rule in advance. During Officer Kusler's testimony, the trial judge asked Officer Kusler why Petitioner provided him with a false name. (ECF No. 9-4, PageID.318). Officer Kusler responded that Petitioner said he gave him a false name because he was on parole and had a warrant.

In rejecting this claim, the Michigan Court of Appels stated:

Defendant next argues that "repeated" references to his parolee status during trial amounted to improper character evidence. With respect to this unpreserved claim of error, defendant simply cannot establish plain error affecting his substantial rights, let alone that he is actually innocent or that any error seriously affected the integrity, public reputation, or fairness of the judicial proceedings independent of his innocence. *See Carines*, 460 Mich at 763. The jury knew that defendant had a prior felony conviction because he was charged with felon in possession of a firearm and because the parties stipulated that defendant had a prior felony conviction. The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime, but that was already known here, so the requisite prejudice allegedly stemming from the parole references has not been shown.

> The trial court also cautioned the jurors not to consider the stipulation and defendant's status as a felon for any purpose other than establishment of the "felon" element for felon in possession. Jurors are presumed to follow a trial court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Reversal is unwarranted.

(ECF No. 9-8, PageID.395).

Petitioner states that the state court's ruling was contrary to *Lisenba v. California*, 314 U.S. 219 (1941). In *Lisenba*, the Supreme Court held that the states are free under the Fourteenth Amendment to admit evidence of other crimes in criminal cases when relevant to issues such as intent, design, or system. *Id.* at 227-28. *See also Estelle*, 502 U.S. 62 (holding that the admission of evidence of other bad acts does not violate due process). The Court also stated that "a criminal trial, denial of due process" occurs when the "absence of [fundamental] fairness fatally infected the trial[.]" *Lisenba*, 314 U.S. at 236.

Here, Petitioner fails to show that the alleged error rose to the level of a federal constitutional claim warranting relief. Despite Petitioner's contentions, the statement regarding the witness being "a" parole officer did not directly indicate that Petitioner was on parole. Moreover, it was Petitioner's defense counsel who first mentioned Petitioner's warrant status to the jury. (ECF No. 9-4, PageID.305). Finally, as the Michigan Court of Appeals correctly observed, the trial court gave the jurors a cautionary instruction that they were to disregard Petitioner's parole status and could not consider it as evidence of Petitioner's guilt. A jury is presumed to have followed a trial court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Under these circumstances, the undersigned finds that the brief references to Petitioner's parole status did not render the trial fundamentally unfair. Therefore, in the opinion of the undersigned, the state court's rejection of Petitioner's claim regarding his parole status is not contrary to or an unreasonable application of clearly established federal law as determined by the

Supreme Court, or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next argues that he was denied due process because the trial judge asked questions to four witnesses—Patricia Holder, Officer Kusler, Officer Marlow, and Nichole Graham.[3] In rejecting this claim, the Michigan Court of Appeals stated:

> Defendant first contends that he was deprived of a neutral, unbiased, and detached decision-maker, asserting that the trial court questioned the victim and other witnesses during the trial in a manner favorable to the prosecution. Under MRE 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." But the trial court's examination of witnesses may not "pierce the veil of judicial impartiality," People v Davis, 216 Mich App 47, 50; 549 NW2d 1 (1996), because a defendant in a criminal trial has a right to a neutral and detached judge, People v Cheeks, 216 Mich App 470, 480; 549 NW2d 584 (1996). On review of the challenged inquiries made by the trial court, it is evident that the court was permissibly "question[ing] witnesses in order to clarify testimony or elicit additional relevant information." People v Conyers, 194 Mich App 395, 404; 487 NW2d 787 (1992). At no point did the trial court pierce the veil of judicial impartiality.

(ECF No. 9-8, PageID.395-396).

The Due Process Clause of the Fourteenth Amendment requires that a criminal trial be presided over by an impartial decision maker. *See, e.g., Tumey v. Ohio*, 273 U.S. 510 (1927). The Supreme Court has held that due process is violated if the trial judge has a direct, personal, and substantial interest in the outcome of a case. *Id.* at 523. Due process also condemns a trial judge's "actual bias" against a defendant. *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). Beyond this, however, habeas corpus relief cannot be granted on the basis of broad due-process principles. *See Carey v. Musladin*, 549 U.S. 70 (2006). Rather, a petitioner must be able to point to a holding

---

[3] Although Petitioner identified four witnesses in his petition, he only identified three witnesses in his Standard 4 Brief. An unexhausted claim may be adjudicated if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2). Thus, the undersigned will address the claim.

of the Supreme Court and then demonstrate that the state-court decision was either contrary to that holding or was an unreasonable application of it. *See Wright v. Van Patten*, 552 U.S. 120, 125–26,

Petitioner has not done so in the present case, because the Supreme Court has never issued a holding imposing any restriction on the ability of a trial judge to question witnesses in a criminal case. In fact, both the Michigan Rules of Evidence and the Federal Rules of Evidence expressly empower a trial judge to examine witnesses. Mich. R. Evid. 614(b); Fed. R. Evid. 614(b).

In addition, after reviewing the trial transcripts, the undersigned finds—consistent with the state court's ruling—that the trial court's questions of the witnesses were neutral and asked in an attempt to clear up confusion regarding the evidence and to elicit additional relevant evidence. Therefore, in the opinion of the undersigned, the decision of the Michigan Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner next argues that he was denied due process when he was not advised of his *Miranda* rights and certain statements were used against him at trial. In rejecting this claim, the Michigan Court of Appeals explained:

> Defendant next argues that the trial court erred by permitting an officer to testify about a statement that defendant made after he was arrested and was in the process of being transported to jail. Defendant maintains that the statement was obtained in violation of his Miranda rights. The officer had asked defendant if he would be willing to submit a DNA sample. And in response to a question from defendant as to why a DNA sample was being requested, the officer explained that it would be used to determine if defendant's DNA was on the gun. Defendant then agreed to submit a DNA sample. According to the officer, after three or four minutes passed, defendant admitted that he had touched the gun with his elbow while "wrestling" with the officers.

> "[V]oluntarily given confessions that are not the result of impermissible custodial interrogations [are] admissible" under Miranda. *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013) (emphasis added). There is no dispute that defendant was in custody when he acknowledged touching the gun; however, the statement was not the result of an interrogation. With respect to whether statements or questions posed by police to a defendant constitute an interrogation, "the dispositive question is whether the 'suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response.'" *Id.* at 208, quoting *Rhode Island v Innis*, 446 US 291, 303; 100 S Ct 1682; 64 L Ed 2d 297 (1980). In this case, the officer's request for a DNA sample and his explanation in regard to why a DNA sample was being requested—which the officer provided only because of defendant's inquiry—were not words that the officer knew or should have known were reasonably likely to elicit the somewhat incriminating response given by defendant. Indeed, defendant's statement, which came after a period of silence with no commentary by the officer, was essentially volunteered by defendant. And statements that are entirely volunteered, lacking any compelling influences, are not constitutionally barred from admission into evidence. *Innis*, 446 US at 299-300. Further, the DNA question posed by the officer can also be viewed as the type of question "'normally attendant to arrest and custody'" and thus not interrogational. *South Dakota v Neville*, 459 US 553, 564 n 15; 103 S Ct 916; 74 LEd 2d 748 (1983), quoting Innis, 446 US at 301. Reversal is unwarranted.

(ECF No. 9-8, PageID.396).

In *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, a custodial interrogation must be preceded by warnings of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *See also Dickerson v. United States*, 530 U.S. 428, 435 (2000). In *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), the Supreme Court defined interrogation to refer "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."

*Id.* at 301. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the holding in *Miranda*. *Miranda*, 384 U.S. at 478; accord *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003); *Wells v. Lafler*, 2013 WL 757620, at * 6 (E.D. Mich. Feb. 28, 2013).

In this case, the Michigan Court of Appeals identified the correct legal standard as set forth in *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980). Although the record is somewhat unclear, the trial transcript establishes that there was a period of time between the officer's only question and Petitioner's incriminating response. Thus, the Michigan Court of Appeals rejected Petitioner's claim because Petitioner made the statements voluntarily and not in response to the questions asked by the officer. The Michigan Court of Appeals also rejected Petitioner's claim because the question regarding DNA could be viewed as the type of questions normally attendant to arrest and custody and thus not interrogational. Other federal courts have found that requesting consent for DNA did not violate the Fifth Amendment. *See Everett v. Secretary, Fla. Dept. of Corrections*, 779 F.3d 1212, 1244 (11th Cir. 2015) ("[T]he Florida Supreme Court reasonably concluded that the request for DNA consent—even though it followed Everett's invocation of his right to counsel under *Miranda*—did not violate his Fifth Amendment rights."). In the opinion of the undersigned, the decision of the Michigan Court of Appels was neither an unreasonable application of *Innis*, nor an unreasonable determination of facts.

Furthermore, the admission of Petitioner's statements was harmless error at worst. The admission of evidence obtained from a suspect in violation of *Miranda* "is harmful if it has a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Kyger v. Carlton*, 146 F.3d 374, 381-82 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In light of the additional evidence in this case—most notably the victim's identification and the

close proximity of the Petitioner to the gun and the purse, Petitioner's statement that his elbow may have touched the gun did not have a "substantial and injurious effect or influence in determining the jury's verdict."

Petitioner finally argues that he was denied his right to confrontation when the trial court allowed an officer to testify regarding a statement made by Petitioner's girlfriend's daughter at the apartment complex. Shortly after the robbery occurred, police officers found Petitioner a couple blocks away from the victim's house and outside an apartment complex. After resisting arrest, Petitioner told the officers that he lived in "Apartment Four" of the apartment complex. The officer testified that he went to "Apartment Four" and an individual eventually answered the door. The officer then stated that he asked the individual whether anyone lived in the apartment that was not currently there. The officer testified that the individual's answer to that question was inconsistent with Petitioner's story. The individual was Petitioner's girlfriend's daughter. Petitioner's girlfriend was also present in the apartment that night but did not talk to police because she had an outstanding warrant.

In rejecting this argument, the Michigan Court of Appeals stated:

Finally, defendant argues that the trial court erred by allowing an officer to testify regarding a statement made by a person in the apartment unit in which defendant was allegedly residing at the time of the crime. The officer simply indicated in cursory, vague terms that the individual provided a statement that was inconsistent with defendant's story relative to where defendant was living. Defendant asserts that this testimony concerned hearsay and that its admission violated the Confrontation Clause. Defendant, however, fails to engage in any meaningful legal analysis regarding hearsay and the Confrontation Clause; therefore, we deem the argument abandoned. *See People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Moreover, assuming error, given the quantum of evidence establishing guilt, any error was harmless beyond a reasonable doubt. *See People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005).

(ECF No. 9-8, PageID.396).

As the Michigan Court of Appeals found, Petitioner failed to engage in any meaningful legal analysis regarding hearsay and the Confrontation Clause. In addition, assuming a constitutional error occurred, Confrontation Clause errors are subject to harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). To determine whether a Confrontation Clause error is harmless, the Sixth Circuit considers: "(1) the importance of the witness' testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case." *Issa v. Bradshaw*, 904 F.3d 446, 460 (6th Cir. 2018) (citing *Madrigal v. Bagley*, 413 F.3d 548, 551 (6th Cir. 2005)).

In this case, Petitioner asserts this error was "devastating" because his sole defense was that he was residing with his girlfriend and his girlfriend's daughter at the apartment complex near where he was arrested. However, whether Petitioner was living in the apartment complex had little significance in this case. In fact, Petitioner's girlfriend testified at trial that Petitioner was living in the apartment and that they were smoking methamphetamine on the night of the robbery. Regardless of whether Petitioner lived in the apartment, the record established that Petitioner was in the apartment the night of the robbery. More importantly, the record also established that Petitioner left the apartment that night. And shortly after the robbery occurred, Petitioner was found by police a few blocks away from the victim's house. When police officers attempted to apprehend Petitioner, he resisted arrest and several officers had to intervene. Eventually, Petitioner provided officers with a fake name. Moments later, police officers found the victim's purse and a handgun near where Petitioner was arrested. Finally, the victim identified Petitioner on three

different occasions. Thus, there was substantial evidence of Petitioner's guilt apart from the officer's testimony that Petitioner's statement was inconsistent with Petitioner's girlfriend's daughter statement. Therefore, the decision of the Michigan Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and, therefore, recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, the undersigned recommends that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could

not find that a dismissal of each of Petitioner's claims was debatable or wrong. First, Petitioner was not denied his right to testify at trial—he chose not to testify. Second, Petitioner was not denied due process when the trial court refused to authorize additional payments for his DNA expert because the DNA expert's testimony would have been cumulative. Next, the claims related to the references to Petitioner's parole status and the questions asked by the judge at trial were relatively minor and did not amount to a constitutional violation. Petitioner's due process claim regarding his own statement to a police officer fails because it was voluntary, and any error was harmless. Lastly, Petitioner's confrontation claim fails because, as the state court held, Petitioner failed to adequately brief this claim in the state court proceedings and any error was harmless. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 29, 2018

                                                      /s/ Timothy P. Greeley  
                                                     TIMOTHY P. GREELEY  
                                                     UNITED STATES MAGISTRATE JUDGE